UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:23-cr-00095-SI |
| v. | **INFORMATION** |
| **JOHN ADAMS,** | 18 U.S.C. § 1001(a)(1) |
| **Defendant.** | |

**THE UNITED STATES ATTORNEY CHARGES:**

**INTRODUCTORY ALLEGATIONS**

1.  At all times relevant to this Information, JOHN ADAMS ("ADAMS"), defendant herein, was a service-disabled veteran of the U.S. Army and a member of the Devils Lake Sioux Tribe residing in Camas, Washington.

2.  ADAMS was the founder and owner of AMCORE CONSTRUCTION, LLC ("AMCORE"). AMCORE was registered to conduct business in the States of Oregon and Washington and maintained its principal place of business in Camas, Washington.

3.  AMCORE performed various contracting services for and with ADAMS's former employer, another construction contractor which shall be referred to herein as "COMPANY-1."

COMPANY-1 was owned by an individual referred to herein as "W-1," who was a friend of ADAMS's family and a longtime mentor.

## REGULATORY BACKGROUND

4. The United States Department of Veterans Affairs ("VA") is the federal government agency charged with serving America's veterans and their families in ensuring they receive medical care, benefits, social support and lasting memorials promoting the health, welfare, and dignity of all veterans in recognition of their service to the United States.

5. The United States Small Business Administration ("SBA") is a federal government agency responsible for aiding, counseling, assisting, and protecting the interests of small business concerns. SBA provided assistance to small businesses that were majority-owned and controlled by socially and economically disadvantaged individuals.

### The VA SDVOSB Program

6. The Veterans Entrepreneurship and Small Business Development Act of 1999 established an annual government-wide goal of awarding contracts to at least three percent of the total value of all federal prime and subcontract awards for small business concerns owned and controlled by Veteran and Service-Disabled Veterans ("SDVs"). Such enterprises are referred to as "SDVOSBs." To be eligible for VA's SDVOSB contract set-aside program, the putative SDV must demonstrate his or her service-connected disability and majority ownership and day-to-day control of the putative SDVOSB.

7. To protect the SDVOSB program from fraud, VA required each SDVOSB, upon being tentatively awarded a contract, to complete and submit VA Form 0877 (Form 0877) to the VETBIZ Vendor Information Pages Verification Program before the contract award could

become final.  Form 0877 required the SDVOSB to certify that the SDV managed or controlled the day-to-day operations and the long-term decision-making of the SDVOSB.

### The SBA Section 8(a) Business Development Program

8. The Section 8(a) Business Development Program ("Section 8(a) Program") was a business-assistance program for small, disadvantaged businesses administered by SBA. Participation in the Section 8(a) Program was divided into two phases over nine years; a four-year developmental stage followed by a five-year transition stage after which a business graduated from the program and was no longer eligible for further Section 8(a) Program awards. COMPANY-1 was a former participant and graduate of the Section 8(a) Program and thus precluded from bidding for contracts made through the program.

9. Section 8(a) Program participants could obtain sole-source contracts and submit offers for contracts that were set aside for Section 8(a) Program participants.  To be eligible to participate in the Section 8(a) Program, businesses were required to satisfy a number of criteria, including being at least 51 percent unconditionally owned and controlled by socially and economically disadvantaged individuals.  A business seeking to participate in the Section 8(a) Program was required to submit an application to SBA containing representations and certifications about the business's eligibility.  Specifically, the applicant was required to provide information to show the business had potential for success and to report any affiliations, such as indemnification and shared-services agreements, because those affiliations could show that someone other than the disadvantaged person controlled the business applying for the program. At all times, SBA depended on the truthfulness of applicants and depended on applicants to

notify SBA if there were any changes that would affect their business's eligibility to participate in the Section 8(a) Program.

**AMCORE'S RELIANCE ON W-1 AND COMPANY-1**

10. Pursuant to a May 2, 2016, personal distribution agreement between ADAMS and W-1, ADAMS agreed to pay W-1 twenty percent of AMCORE's profits, totaling up to $250,000, in exchange for business resources and support from COMPANY-1.

11. The following year, on or about May 11, 2017, ADAMS and W-1 entered into a services agreement that provided that W-1 would furnish AMCORE with, among other things, equipment and personnel. In exchange for W-1's promised resources and other support, AMCORE agreed to pay W-1 twenty percent of AMCORE's net profits, to be capped at the sum of $300,000.

12. The foregoing agreements memorialized a longstanding arrangement between AMCORE, W-1, and COMPANY-1. From its inception, AMCORE routinely used COMPANY-1's personnel and resources, including a business truck, office space, and bookkeeper.

**AMCORE'S APPLICATIONS FOR THE SECTION 8(a) AND SVDOSB PROGRAMS**

13. On May 13, 2016, ADAMS applied to SBA for certification of AMCORE to participate in the Section 8(a) Program. The application was processed by SBA's office in Portland, Oregon. SBA granted AMCORE's application in July 2016.

14. ADAMS also applied to VA to have AMCORE certified as a SDVOSB. That certification was granted in August 2016.

/ / /

/ / /

15. In both the Section 8(a) and SDVOSB Program applications, ADAMS falsely denied that AMCORE relied on resources or support provided by any other business concern or had any agreement for the provision of such resources and support.

16. ADAMS twice applied to the SBA in Portland, Oregon, for recertification of AMCORE's Section 8(a) Program eligibility: first on July 31, 2017, and again on July 31, 2018. In both applications, ADAMS falsely denied that any other entity or individual provided Amcore with resources and support, including "office space or equipment."

## COUNT 1
**(Concealment of Material Fact)**
**(18 U.S.C. § 1001(a)(1))**

17. Beginning in May 2016 and continuing through at least July 31, 2018, in the District of Oregon and elsewhere, the defendant, JOHN ADAMS did knowingly and willfully falsify, conceal, and cover up by trick, scheme, and device a material fact in a matter within the jurisdiction of the Executive Branch of the Government of the United States, in that ADAMS knowingly and falsely denied in submissions to the Small Business Administration and the Department of Veterans Affairs the fact that AMCORE agreed to and did rely on resources, specifically "office space or equipment," provided by another business, to wit COMPANY-1, when there was a legal duty to disclose the same.

All in violation of 18 U.S.C. § 1001(a)(1).

Dated: March 22, 2023

Respectfully submitted,

NATALIE WIGHT
United States Attorney

*/s/ Ryan W. Bounds*
RYAN W. BOUNDS, OSB #000129
Assistant United States Attorney